IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CRAIG M. BOYKINS,** | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: |
| | : | |
| v. | : | |
| | : | |
| **CAN CORPORATION OF AMERICA, INC.,** | : | **JURY TRIAL DEMANDED** |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

## COMPLAINT

Plaintiff, Craig M. Boykins, by and through his undersigned counsel, The Lacy Employment Law Firm, LLC, files this Complaint against Defendant Can Corporation of America, Inc., and avers as follows:

## NATURE OF THE ACTION

1. This is an action for disability discrimination, failure to accommodate, and retaliation; age discrimination and retaliation; interference and retaliation in violation of the Family and Medical Leave Act; and violation of the notice requirements governing continuation health coverage. Plaintiff Craig M. Boykins brings claims under the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101, *et seq.*; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*; the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*; the Consolidated Omnibus Budget

Reconciliation Act ("COBRA"), as codified in the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1161, *et seq.*; and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*.

2. Plaintiff devoted more than thirty-five years of his working life to Defendant, beginning in 1988. When a disability flare-up forced him onto medical leave in March 2023, Defendant funneled him through a rigid, calendar-driven leave-exhaustion process, issued him a return-or-be-terminated ultimatum, and discharged him the moment its self-imposed leave clock expired—without ever engaging in the interactive process the ADA requires, without evaluating whether a brief additional period of leave or any other accommodation would permit his return, and while Plaintiff remained certified as totally disabled by Defendant's own short-term disability administrator through August 31, 2023.

3. Defendant's termination also stripped Plaintiff of the health benefits he needed for a scheduled surgery of which Defendant was aware, and reflected a pattern of purging long-tenured, older employees and replacing them with substantially younger workers. The Equal Employment Opportunity Commission investigated Plaintiff's charge and found reasonable cause to believe that Defendant discriminated against Plaintiff in violation of the ADA by failing to engage in the interactive process and instead retaliating against him by terminating his employment.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343, as the action arises under the ADA and the ADEA.

5. This Court has supplemental jurisdiction over Plaintiff's state-law PHRA claims pursuant to 28 U.S.C. § 1367, because those claims arise from the same common nucleus of operative facts as Plaintiff's federal claims and form part of the same case or controversy.

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District. Defendant maintains its principal place of business at 326 June Avenue, Blandon, Pennsylvania 19510, within this District, and the unlawful employment practices alleged herein were committed within this District.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

7. On or about June 3, 2024, Plaintiff timely dual-filed a Charge of Discrimination with the Philadelphia District Office of the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"), alleging discrimination and retaliation on the basis of disability and age. The Charge was assigned EEOC Charge No. 530-2024-05938.

8. On or about April 25, 2025, Plaintiff filed an Amended Charge of Discrimination that further detailed his allegations of disability discrimination, failure to accommodate, age discrimination, retaliation, and harassment.

9. Plaintiff's Charge was cross-filed with the PHRC, thereby satisfying the dual-filing requirement of the PHRA. More than one year has elapsed since the filing of the Charge with the PHRC.

10. On or about May 1, 2026, following its investigation, the EEOC issued a Determination finding reasonable cause to believe that Defendant discriminated against Plaintiff on the basis of his disability in violation of the ADA when it failed to engage in the interactive

process and instead retaliated against Plaintiff by terminating his employment. The EEOC invited the parties to conciliation.

11. On or about July 15, 2026, after conciliation efforts failed, the EEOC issued Plaintiff a Notice of Right to Sue (Conciliation Failure) with respect to EEOC Charge No. 530-2024-05938. A true and correct copy of the Notice of Right to Sue is attached hereto as **Exhibit 1** and incorporated by reference.

12. Plaintiff has filed this Complaint within ninety (90) days of his receipt of the Notice of Right to Sue.

13. Plaintiff has fully complied with, and exhausted, all administrative prerequisites to the commencement of this action.

## PARTIES

14. Plaintiff Craig M. Boykins ("Plaintiff" or "Mr. Boykins") is an adult individual residing at 645 Kimmels Road, Orwigsburg, Pennsylvania 17961. At all relevant times, Plaintiff was employed by Defendant and was an "employee" within the meaning of the ADA, the ADEA, and the PHRA.

15. Defendant Can Corporation of America, Inc. ("Defendant" or "CCA") is a corporation engaged primarily in the manufacturing of steel cans for the food industry, with its principal place of business located at 326 June Avenue, Blandon, Pennsylvania 19510. At all relevant times, CCA was an "employer" within the meaning of the ADA, the ADEA, and the PHRA, and employed the requisite number of employees to be subject to each statute.

16. At all relevant times, CCA acted through its officers, managers, agents, and employees, including its Human Resources Manager, Jhensen Alvarez, each of whom acted within the scope of his or her authority and on behalf of CCA.

## FACTUAL BACKGROUND

### A. Plaintiff's Long Tenure and Disability

17. Plaintiff began working for CCA in 1988 as a Machine Operator. Over the course of more than three decades of dedicated service, Plaintiff held multiple positions and rose to the position of Plant Maintenance Mechanic (also referred to by Defendant as Mechanic II).

18. Throughout his employment, Plaintiff was a capable employee who performed the essential functions of his positions and devoted his career to building the company, frequently working long hours.

19. Plaintiff has a disability within the meaning of the ADA and the PHRA. CCA was aware of Plaintiff's disability throughout the relevant period.

### B. Plaintiff's Medical Leave and Continuing Total Disability

20. On or about March 13, 2023, Plaintiff experienced a flare-up of his disability and was rendered unable to work. Defendant provided Plaintiff with FMLA paperwork, and Plaintiff commenced a medical leave of absence.

21. Plaintiff regularly kept in contact with Defendant during his leave and remained under the care of his health care providers throughout.

22. Plaintiff's leave was, at all times, tied to a genuine and documented serious health condition. Defendant's own short-term disability claims administrator, North American Benefits Company ("NABCO"), repeatedly certified and approved short-term disability benefits for Plaintiff based on his continuing total disability.

23. By letter dated June 8, 2023, NABCO advised Plaintiff that his short-term disability claim had been approved for additional benefits, and its accompanying Advice to Pay approved benefits through July 1, 2023. The Notes section of that June 8, 2023 letter stated that

the submitted Attending Physician's Statement notes reflected that Plaintiff was continuously totally disabled through July 1, 2023, and directed that, if Plaintiff was unable to return to work effective July 2, 2023, an updated Attending Physician's Statement be submitted.

24. By letter dated July 20, 2023, NABCO again advised Plaintiff that his short-term disability claim had been approved for additional benefits, and its accompanying Advice to Pay extended approved benefits through August 31, 2023—that is, through and beyond the date on which Defendant terminated Plaintiff. This July 20, 2023 approval, signed on July 20, 2023, confirms that Defendant's own disability administrator recognized Plaintiff as totally disabled well past the arbitrary July 21, 2023 return-to-work deadline Defendant imposed.

25. The Notes section of the July 20, 2023 letter was left unchanged from the earlier June 8, 2023 letter and continued to reference the July 1/July 2, 2023 dates. That field was not updated to reflect the extended August 31, 2023 approval period reflected on the face of the same July 20, 2023 Advice to Pay. The stale, un-updated Notes field was a clerical carryover and does not alter the operative fact that NABCO approved and paid short-term disability benefits to Plaintiff on the basis of continuing total disability through August 31, 2023.

**C. <u>Defendant's Ultimatum and Termination</u>**

26. By letter dated July 6, 2023, on Giorgi Global Holdings, Inc. letterhead and signed by Human Resources Manager Jhensen Alvarez, Defendant notified Plaintiff that his FMLA leave and an additional five weeks of company-provided leave would exhaust on July 20, 2023, and that Plaintiff was expected to return to work on July 21, 2023.

27. The July 6, 2023 letter demanded that Plaintiff either return to work on July 21, 2023 with certification that he could perform the essential functions of his job with or without

accommodations, or inform Defendant of his intent, failing which Defendant would proceed to end his employment.

28. On or before July 14, 2023, Defendant, through its Human Resources Manager, reiterated to Plaintiff the ultimatum that he return to work by July 21, 2023 or face termination.

29. At no point did Defendant engage Plaintiff in any good-faith, individualized, interactive dialogue about the nature of his limitations, the anticipated duration of his condition, whether a finite additional period of leave would enable his return, whether reassignment or any other accommodation was available, or any other means by which Plaintiff might continue his decades-long employment. Defendant's process consisted solely of a mechanical countdown to a predetermined termination date.

30. Defendant's demand that Plaintiff return "without restrictions" as a condition of continued employment was itself unlawful, as it categorically refused to consider reasonable accommodations and treated any ongoing limitation as automatically disqualifying.

31. On July 21, 2023, Defendant terminated Plaintiff's employment. Upon his termination, Defendant informed Plaintiff that he could return only once he was able to work without any restrictions, and that he would be required to return as a "new hire", stripped of all seniority and benefits accumulated over his decades of service.

32. Defendant terminated Plaintiff even though its own short-term disability administrator had, one day earlier, approved short-term disability benefits for Plaintiff through August 31, 2023 on the basis of his continuing total disability. Defendant thus discharged Plaintiff at the very moment he remained medically certified as unable to work—demonstrating that the return-or-terminate ultimatum was not a good-faith effort to return Plaintiff to work but a pretextual mechanism to end his employment.

**D. Termination of Benefits and Denial of Surgery**

33. Following the termination, and unbeknownst to Plaintiff, Defendant terminated Plaintiff's health benefits as of July 31, 2023.

34. Defendant was aware that Plaintiff had a surgery scheduled that depended on his continued health coverage. The termination of Plaintiff's benefits led to the denial of that scheduled surgery, causing Plaintiff to suffer continuing medical complications, physical harm, and severe emotional distress.

**E. Defendant's Failure to Engage in the Interactive Process**

35. Defendant's own policies recognize its obligation to accommodate qualified individuals with disabilities. Defendant's Team Member Handbook states that CCA "will make reasonable accommodations for qualified individuals with disabilities unless doing so would result in an undue hardship," and its parent company's Nondiscrimination, Anti-Harassment and Anti-Bullying Policy likewise commits to reasonably accommodating qualified individuals with a disability to allow them to perform the essential functions of the job.

36. Notwithstanding these written policies, Defendant made no effort to accommodate Plaintiff. Defendant never referred Plaintiff's situation to an interactive dialogue, never requested updated medical information for the purpose of exploring accommodation (as opposed to enforcing its leave deadline), and never considered any accommodation short of an immediate, unconditional, restriction-free return to work.

37. A brief, finite extension of leave beyond July 21, 2023, particularly given that Defendant's own disability administrator had approved benefits through August 31, 2023, would have constituted a reasonable accommodation that would not have imposed an undue hardship on Defendant, a manufacturer employing hundreds of workers.

38. The EEOC investigated and found reasonable cause to believe that Defendant discriminated against Plaintiff on the basis of his disability in violation of the ADA when it failed to engage in the interactive process and instead retaliated against him by terminating his employment.

**F. Pattern of Age Discrimination**

39. At the time of his termination, Plaintiff was 54 years old (year of birth 1968) and a member of the class protected by the ADEA.

40. Defendant engaged in a systematic effort to eliminate long-standing, older employees and to replace them with substantially younger workers, including through the use of temporary staffing agencies.

41. Beginning in or about 2015 and continuing through his termination, Plaintiff was subjected to ongoing harassment, intimidation, and unwarranted disciplinary actions on the basis of his age and disability.

42. Defendant's insistence that Plaintiff could return only as a "new hire" stripped of decades of accumulated seniority and benefits further reflects Defendant's animus toward its older, long-tenured workforce and its intent to divest such employees of the value of their long service.

**G. Retaliation**

43. Plaintiff engaged in protected activity, including requesting a reasonable accommodation for his disability, seeking to preserve his employment during his medical leave, and opposing Defendant's discriminatory treatment, including by previously speaking out against excessive workloads and reporting incidents of harassment.

44. Following and because of Plaintiff's protected activity, Defendant subjected Plaintiff to materially adverse actions, including the return-or-terminate ultimatum, the termination of his employment, and the termination of his health benefits.

45. The close temporal proximity between Plaintiff's accommodation-related protected activity and his termination, together with Defendant's refusal to engage in any interactive process, evidences Defendant's retaliatory motive.

### H. <u>Defendant's Handling of Plaintiff's FMLA Leave</u>

46. At all relevant times, Plaintiff was an eligible employee under the FMLA. He had been employed by Defendant for more than twelve months, had worked at least 1,250 hours during the twelve-month period preceding his leave, and worked at a worksite where Defendant employed at least fifty employees within seventy-five miles.

47. Defendant was a covered employer under the FMLA, and Plaintiff's March 2023 leave was occasioned by a serious health condition that rendered him unable to perform the functions of his position, an FMLA-qualifying reason.

48. Plaintiff was entitled to twelve weeks of FMLA leave, together with the continuation of his group health coverage during that leave and the right to reinstatement to the same or an equivalent position upon his return.

49. Defendant interfered with, restrained, and denied the exercise of Plaintiff's FMLA rights. Among other things, Defendant misapplied and miscounted Plaintiff's FMLA entitlement, conflated its FMLA obligations with a rigid internal leave-exhaustion deadline, failed to properly designate and account for the leave to which Plaintiff was entitled, and used the purported expiration of leave as the basis to terminate Plaintiff rather than restore him to his position.

50. Defendant further failed to maintain Plaintiff's group health coverage as required in connection with his leave, terminating his benefits as of July 31, 2023 and thereby denying him coverage for his scheduled surgery.

51. At the time Defendant terminated Plaintiff's health coverage effective July 31, 2023, Defendant knew that Plaintiff had surgery scheduled for August 4, 2023. A six-week extension of Plaintiff's leave, through on or about September 16, 2023, would have preserved his coverage through that surgery and permitted his return; Defendant refused to grant it, notwithstanding Plaintiff's more than thirty-five years of service.

52. As a direct and proximate result of Defendant's termination of his coverage, Plaintiff underwent the August 4, 2023 surgery without insurance and was left personally responsible for its cost. Plaintiff thereafter received an Explanation of Benefits reflecting that charges exceeding $20,000 for the August 4, 2023 date of service were denied for lack of medical coverage. Complications from that surgery—including the failure of the surgical mesh—have left Plaintiff unable to work, unable to schedule a follow-up surgery to fix the mesh because lack of insurance benefits, impaired his eligibility for unemployment benefits, and forced him to seek disability benefits, while causing him substantial financial hardship, humiliation, loss of self-esteem, and emotional distress.

53. Defendant also retaliated against Plaintiff for taking and attempting to exercise his FMLA rights. Plaintiff's exercise of FMLA leave was a negative factor in, and a proximate cause of, Defendant's decision to issue the return-or-terminate ultimatum and to terminate his employment, as evidenced by the close connection between the exhaustion of his leave and his discharge.

## I. <u>Termination of Health Coverage and COBRA</u>

54. At all relevant times, Defendant sponsored and maintained a group health plan within the meaning of ERISA and COBRA, 29 U.S.C. § 1167, and Defendant was the plan administrator or was responsible for the plan's administration.

55. Plaintiff and any covered beneficiaries were covered under Defendant's group health plan immediately before the qualifying event.

56. Plaintiff's termination on July 21, 2023, and the resulting loss of coverage effective July 31, 2023, constituted a "qualifying event" under COBRA, 29 U.S.C. § 1163, that caused Plaintiff to lose group health coverage.

57. Upon the occurrence of that qualifying event, Defendant was obligated to provide Plaintiff with timely, adequate notice of his right to elect continuation coverage under COBRA, 29 U.S.C. § 1166. Although Defendant's July 6, 2023 letter stated that COBRA information would be sent separately, Defendant failed to furnish Plaintiff with the timely and legally compliant COBRA election notice the statute requires.

58. As a result of Defendant's failure to provide a compliant COBRA notice, Plaintiff was deprived of the opportunity to elect continuation coverage, was denied coverage for his scheduled surgery, and suffered resulting medical, financial, and emotional harm.

**J. <u>Pretext and Harm</u>**

59. The reason Defendant has offered for Plaintiff's termination, that he exhausted his leave and failed to return to work, is pretextual. Defendant terminated Plaintiff while its own disability administrator certified him as totally disabled through August 31, 2023; refused to engage in any interactive process; and imposed an unlawful "no-restrictions" return-to-work condition. Defendant's asserted reliance on a rigid leave-exhaustion deadline masks its true motive of ridding itself of an older, disabled, long-tenured employee.

60. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, lost earning capacity, the denial of necessary surgery and resulting medical complications, physical harm, emotional distress, humiliation, and other harm.

**COUNT I**
**Disability Discrimination in Violation of the ADA, 42 U.S.C. § 12101, et seq.**
*(Plaintiff v. Can Corporation of America, Inc.)*

61. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

62. Plaintiff is a qualified individual with a disability within the meaning of the ADA. Plaintiff has a physical or mental impairment that substantially limits one or more major life activities. In the alternative, Plaintiff has a record of such an impairment and/or Defendant regarded Plaintiff as having such an impairment.

63. At all relevant times, Plaintiff was able to perform the essential functions of his position, with or without a reasonable accommodation.

64. Defendant, through its agents, was aware of Plaintiff's disability.

65. Defendant subjected Plaintiff to adverse employment actions, including the termination of his employment and the termination of his health benefits, because of his actual disability, his record of disability, and/or because Defendant regarded him as disabled.

66. The reasons proffered by Defendant for its actions are pretextual.

67. As a direct and proximate result of Defendant's violations of the ADA, Plaintiff has suffered the damages described herein, for which he seeks all relief available under 42 U.S.C. § 12117 and 42 U.S.C. § 1981a, including compensatory and punitive damages, back pay, front pay, and attorneys' fees and costs.

**COUNT II**

**Failure to Accommodate in Violation of the ADA, 42 U.S.C. § 12101, et seq.**

*(Plaintiff v. Can Corporation of America, Inc.)*

68. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

69. Plaintiff is a qualified individual with a disability who was able to perform the essential functions of his position with a reasonable accommodation.

70. Defendant had notice of Plaintiff's disability and his need for accommodation, including through his continuing medical leave and Defendant's own knowledge of his ongoing total disability as certified by its short-term disability administrator.

71. A reasonable accommodation was available that would have enabled Plaintiff to perform the essential functions of his position, including a brief, finite extension of medical leave beyond July 21, 2023, particularly given that Defendant's own disability administrator had approved benefits through August 31, 2023, and/or reassignment or other accommodation.

72. The accommodation Plaintiff required was reasonable and would not have imposed an undue hardship on Defendant.

73. Defendant failed to engage in the interactive process in good faith. Defendant made no effort to identify or provide any reasonable accommodation, instead imposing a rigid return-to-work deadline and an unlawful "no-restrictions" condition, and terminating Plaintiff's employment. The EEOC found reasonable cause to believe that Defendant failed to engage in the interactive process in violation of the ADA.

74. As a direct and proximate result of Defendant's failure to accommodate in violation of the ADA, Plaintiff has suffered the damages described herein, for which he seeks all relief available under the ADA.

**COUNT III**
**Retaliation in Violation of the ADA, 42 U.S.C. § 12101, et seq.**
*(Plaintiff v. Can Corporation of America, Inc.)*

75. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

76. Plaintiff engaged in protected activity under the ADA, including requesting a reasonable accommodation for his disability and opposing Defendant's failure to accommodate and its discriminatory treatment.

77. Defendant was aware of Plaintiff's protected activity.

78. Following and because of Plaintiff's protected activity, Defendant subjected Plaintiff to materially adverse actions, including the termination of his employment and the termination of his health benefits.

79. A causal connection exists between Plaintiff's protected activity and the adverse actions, as evidenced by, among other things, their close temporal proximity and Defendant's refusal to engage in any interactive process. The EEOC found reasonable cause to believe that Defendant retaliated against Plaintiff by terminating his employment.

80. As a direct and proximate result of Defendant's retaliation in violation of the ADA, Plaintiff has suffered the damages described herein, for which he seeks all relief available under the ADA.

**COUNT IV**
**Age Discrimination in Violation of the ADEA, 29 U.S.C. § 621, et seq.**
*(Plaintiff v. Can Corporation of America, Inc.)*

81. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

82. At all relevant times, Plaintiff was over forty (40) years of age and a member of the class protected by the ADEA.

83. Plaintiff was qualified for his position and performed his job satisfactorily throughout his more than three decades of service.

84. Defendant subjected Plaintiff to adverse employment actions, including his termination, while engaging in a systematic effort to replace older, long-tenured employees with substantially younger workers.

85. Defendant treated substantially younger, similarly situated employees more favorably than Plaintiff under circumstances giving rise to an inference of age discrimination.

86. But for Plaintiff's age, Defendant would not have taken the adverse actions described herein. The reasons proffered by Defendant for its actions are pretextual.

87. Defendant's conduct was willful, knowing, and in reckless disregard of Plaintiff's rights under the ADEA, entitling Plaintiff to liquidated damages.

88. As a direct and proximate result of Defendant's violations of the ADEA, Plaintiff has suffered the damages described herein, for which he seeks all relief available under 29 U.S.C. § 626, including back pay, front pay, liquidated damages, prejudgment interest, and attorneys' fees and costs.

**COUNT V**
**Retaliation in Violation of the ADEA, 29 U.S.C. § 621, et seq.**
*(Plaintiff v. Can Corporation of America, Inc.)*

89. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

90. Plaintiff engaged in protected activity under the ADEA, including opposing Defendant's age-based discriminatory treatment and reporting harassment.

91. Defendant was aware of Plaintiff's protected activity.

92. Following and because of Plaintiff's protected activity, Defendant subjected Plaintiff to materially adverse actions, including his termination.

93. A causal connection exists between Plaintiff's protected activity and the adverse actions, as evidenced by, among other things, their temporal proximity and Defendant's shifting and pretextual explanations.

94. As a direct and proximate result of Defendant's retaliation in violation of the ADEA, Plaintiff has suffered the damages described herein, for which he seeks all relief available under 29 U.S.C. § 626.

**COUNT VI**
**Interference in Violation of the FMLA, 29 U.S.C. § 2601, et seq.**
*(Plaintiff v. Can Corporation of America, Inc.)*

95. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

96. At all relevant times, Plaintiff was an eligible employee and Defendant was a covered employer within the meaning of the FMLA.

97. Plaintiff had a serious health condition that rendered him unable to perform the functions of his position, entitling him to FMLA leave, to the continuation of his group health coverage during that leave, and to reinstatement to the same or an equivalent position upon his return.

98. Defendant interfered with, restrained, and denied the exercise of Plaintiff's rights under the FMLA, including by miscounting and misapplying his FMLA entitlement, failing to properly designate and account for his leave, failing to maintain his group health coverage in

connection with his leave, denying him reinstatement, and terminating his employment based on the purported exhaustion of leave.

99. Defendant's violations of the FMLA were not in good faith, entitling Plaintiff to liquidated damages.

100. As a direct and proximate result of Defendant's interference in violation of the FMLA, Plaintiff has suffered the damages described herein, for which he seeks all relief available under 29 U.S.C. § 2617, including lost wages, salary, benefits, and other compensation, liquidated damages, equitable relief including reinstatement, interest, and reasonable attorneys' fees and costs.

**COUNT VII**
**Retaliation in Violation of the FMLA, 29 U.S.C. § 2601, et seq.**
*(Plaintiff v. Can Corporation of America, Inc.)*

101. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

102. Plaintiff engaged in protected activity under the FMLA when he took and attempted to exercise his right to FMLA-protected leave.

103. Defendant was aware of Plaintiff's exercise of his FMLA rights.

104. Following and because of Plaintiff's exercise of his FMLA rights, Defendant subjected Plaintiff to materially adverse actions, including the return-or-terminate ultimatum and the termination of his employment.

105. Plaintiff's exercise of his FMLA rights was a negative factor in, and a proximate cause of, Defendant's adverse actions, as evidenced by the close connection between the exhaustion of his leave and his discharge.

106. As a direct and proximate result of Defendant's retaliation in violation of the FMLA, Plaintiff has suffered the damages described herein, for which he seeks all relief available under 29 U.S.C. § 2617.

**COUNT VIII**
**Failure to Provide COBRA Notice in Violation of ERISA, 29 U.S.C. § 1161, et seq.**
*(Plaintiff v. Can Corporation of America, Inc.)*

107. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

108. At all relevant times, Defendant sponsored and maintained a group health plan subject to COBRA, and Defendant was the plan administrator or was otherwise responsible for providing notice of continuation-coverage rights.

109. Plaintiff was a covered participant in Defendant's group health plan immediately before the qualifying event.

110. Plaintiff's termination and resulting loss of coverage effective July 31, 2023 constituted a qualifying event under 29 U.S.C. § 1163.

111. Defendant failed to provide Plaintiff with the timely and legally sufficient notice of his right to elect continuation coverage required by 29 U.S.C. § 1166, thereby depriving Plaintiff of the opportunity to elect continuation coverage and of coverage for his scheduled surgery.

112. As a direct and proximate result of Defendant's failure to comply with COBRA's notice requirements, Plaintiff has suffered the damages described herein, for which he seeks all relief available under 29 U.S.C. § 1132, including statutory penalties of up to $110 per day, the medical expenses and losses he incurred as a result of the denial of coverage, other appropriate equitable relief, and reasonable attorneys' fees and costs.

**COUNT IX**
**Disability Discrimination in Violation of the PHRA, 43 P.S. § 951, et seq.**
*(Plaintiff v. Can Corporation of America, Inc.)*

113. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

114. At all relevant times, Defendant was an "employer" within the meaning of the PHRA, and Plaintiff was an "employee" protected by the PHRA.

115. Plaintiff dual-filed his Charge with the PHRC, and more than one year has elapsed since that filing. Plaintiff has therefore exhausted his administrative remedies under the PHRA.

116. The PHRA prohibits the same disability-based discrimination prohibited by the ADA, and PHRA claims are generally analyzed coextensively with their federal counterparts.

117. By subjecting Plaintiff to adverse employment actions, including his termination, because of his disability, his record of disability, and/or because Defendant regarded him as disabled, Defendant violated the PHRA.

118. As a direct and proximate result of Defendant's violations of the PHRA, Plaintiff has suffered the damages described herein, for which he seeks all relief available under the PHRA, including compensatory damages and attorneys' fees and costs.

**COUNT X**
**Failure to Accommodate in Violation of the PHRA, 43 P.S. § 951, et seq.**
*(Plaintiff v. Can Corporation of America, Inc.)*

119. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

120. Plaintiff is a qualified individual with a disability who was able to perform the essential functions of his position with a reasonable accommodation.

121. Plaintiff required a reasonable accommodation, including a brief, finite extension of medical leave and/or reassignment or other accommodation, that would not have imposed an undue hardship on Defendant.

122. Defendant failed to engage in the interactive process in good faith and failed to provide any reasonable accommodation, in violation of the PHRA.

123. As a direct and proximate result of Defendant's failure to accommodate in violation of the PHRA, Plaintiff has suffered the damages described herein, for which he seeks all relief available under the PHRA.

**COUNT XI**
**Retaliation in Violation of the PHRA, 43 P.S. § 951, et seq.**
*(Disability)*
*(Plaintiff v. Can Corporation of America, Inc.)*

124. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

125. Plaintiff engaged in protected activity under the PHRA, including requesting a reasonable accommodation for his disability and opposing Defendant's discriminatory treatment.

126. Defendant was aware of Plaintiff's protected activity.

127. Following and because of Plaintiff's protected activity, Defendant subjected Plaintiff to materially adverse actions, including the termination of his employment and the termination of his health benefits.

128. A causal connection exists between Plaintiff's protected activity and the adverse actions.

129. As a direct and proximate result of Defendant's retaliation in violation of the PHRA, Plaintiff has suffered the damages described herein, for which he seeks all relief available under the PHRA.

**COUNT XII**
**Age Discrimination in Violation of the PHRA, 43 P.S. § 951, et seq.**
*(Plaintiff v. Can Corporation of America, Inc.)*

130. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

131. At all relevant times, Plaintiff was over forty (40) years of age and protected by the PHRA.

132. Plaintiff was qualified for his position and performed his job satisfactorily.

133. Defendant subjected Plaintiff to adverse employment actions, including his termination, while engaging in a systematic effort to replace older, long-tenured employees with substantially younger workers, under circumstances giving rise to an inference of age discrimination.

134. The reasons proffered by Defendant for its actions are pretextual.

135. As a direct and proximate result of Defendant's violations of the PHRA, Plaintiff has suffered the damages described herein, for which he seeks all relief available under the PHRA, including compensatory damages and attorneys' fees and costs.

**COUNT XIII**
**Retaliation in Violation of the PHRA, 43 P.S. § 951, et seq.**
*(Age)*
*(Plaintiff v. Can Corporation of America, Inc.)*

136. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

137. Plaintiff engaged in protected activity under the PHRA, including opposing Defendant's age-based discriminatory treatment and reporting harassment.

138. Defendant was aware of Plaintiff's protected activity.

139. Following and because of Plaintiff's protected activity, Defendant subjected Plaintiff to materially adverse actions, including his termination.

140. A causal connection exists between Plaintiff's protected activity and the adverse actions.

141. As a direct and proximate result of Defendant's retaliation in violation of the PHRA, Plaintiff has suffered the damages described herein, for which he seeks all relief available under the PHRA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Craig M. Boykins respectfully requests that this Court enter judgment in his favor and against Defendant Can Corporation of America, Inc., and grant the following relief:

a. Declaring that the acts and practices complained of herein violate the ADA, the ADEA, the FMLA, COBRA, and the PHRA;

b. Enjoining Defendant from engaging in the unlawful practices alleged herein;

c. Awarding Plaintiff back pay, front pay, lost benefits, and lost earning capacity, in amounts to be determined at trial;

d. Awarding Plaintiff compensatory damages, including damages for emotional distress, humiliation, physical harm, and loss of life's enjoyment, under the ADA and the PHRA;

e. Awarding Plaintiff liquidated damages under the ADEA and the FMLA for Defendant's willful and bad-faith violations;

f. Awarding Plaintiff, under the FMLA, his lost wages, salary, benefits, and other compensation, together with equitable relief including reinstatement, and interest;

g. Awarding Plaintiff, under COBRA, statutory penalties of up to $110 per day, the medical expenses and losses caused by the denial of coverage, and other appropriate equitable relief;

h. Awarding Plaintiff punitive damages under the ADA;

i. Awarding Plaintiff prejudgment and post-judgment interest;

j. Awarding Plaintiff the costs of suit, expert fees, and reasonable attorneys' fees; and

k. Granting such other and further relief as this Court deems just, proper, and equitable.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

THE LACY EMPLOYMENT LAW FIRM, LLC

*/s/ Andrew Lacy, Jr.*

Andrew Lacy, Jr., Esq.
3675 Market Street, Suite 200

Philadelphia, PA 19104
(t) 412-301-3908
andrew.lacy@lacylegal.com

*Counsel for Plaintiff*

Dated: September 1, 2026

# EXHIBIT 1

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Philadelphia District Office**
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (CONCILIATION FAILURE)

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 07/15/2026

**To:** Craig M. Boykins
645 Kimmels Rd
Orwigsburg, PA 17961
Charge No: 530-2024-05938

EEOC Representative and phone: Legal unit Representative
267-589-9707

---

### NOTICE OF RIGHT TO SUE (CONCILIATION FAILURE)

To the person aggrieved: This notice concludes the EEOC s processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 530-2024-05938.

On behalf of the Commission,

Digitally Signed By:Karen McDonough
07/15/2026

Karen McDonough
Deputy Director

**Cc:**
Andrew D La Fiura
Jackson Lewis P.C.
1601 CHERRY ST STE 1350
Philadelphia, PA 19102

Jhensen Alvarez
Can Corporation of America
326 June Ave
Blandon, PA 19510

NA NA
326 JUNE AVE
BLANDON, PA 19510

Sophia Czerniecki
Jackson Lewis P.C.
1601 CHERRY ST STE 1350
Philadelphia, PA 19102

Jason S Kaner
Jackson Lewis P.C.
1601 Cherry Street Suite 1350
Philadelphia, PA 19102

Austin Skelton
3675 Market Street Suite
Philadelphia, PA 19104

Andrew Lacy, Jr. Esq.
THE LACY EMPLOYMENT LAW FIRM LLC
3675 Market Street, Suite 200
Philadelphia, PA 19104

Please retain this Notice for your records.

# INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court* ***under Federal law****. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 530-2024-05938 to the District Director at Karen McDonough, 801 Market St Suite 1000, Philadelphia, PA 19107.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 530-2024-05938 to the District Director at Karen McDonough, 801 Market St Suite 1000, Philadelphia, PA 19107.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)**

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.
- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- ✓ **Only one** major life activity need be substantially limited.
- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

**are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.
- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability."

***Note:*** *Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.